**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| JENNIFER L. GREEN, )<br>      Plaintiff, )<br>)<br>v. )<br>)  CAUSE NO.: 1:12-CV-176-JEM<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>      Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jennifer L. Green on May 31, 2012, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 17], filed by Plaintiff on December 4, 2012. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On March 7, 2013, the Commissioner filed a response, and on May 13, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On December 5, 2009, Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on August 15, 2007, and later amended her application to allege disability as of November 25, 2008. Plaintiff's application was denied initially and upon reconsideration. On July 22, 2010, Administrative Law Judge ("ALJ") John S. Pope held a hearing at which Plaintiff, with counsel, two witnesses, and a vocational expert ("VE") testified. On October

25, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. On March 29, 2012, the Appeals Council modified the ALJ's findings, and concluded:

1. The claimant has not engaged in substantial gainful activity since the application date of November 25, 2008 (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: depression, anxiety, substance abuse disorder, degenerative disc disease, history of carpal tunnel syndrome and arthritis (20 CFR 404.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 416.920 (d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light exertional work as defined in 20 CFR 416.967(b) except that she can have no more than occasional contact with the public, coworkers and supervisors. She is also limited to understanding, remembering, and carrying out simple job instructions.

5. The claimant is capable of performing past relevant work as generally performed as a cleaner/housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 416.920(e)).

6. The claimant has not been under a disability, as defined in the Social Security Act, since November 25, 2008. (20 CFR 416.920(f)).

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.    Background**

Plaintiff was 34 years old on the date of her alleged disability onset. She did not finish high school but obtained a GED. She had past work experience as a cleaner and housekeeper.

**B.    Mental Health Evidence**

In November 2008, and through the time period covered by the record, Plaintiff received mental health treatment at the Northeastern Center. Her treatment included psychiatric evaluations, psychotherapy, including group therapy, and multiple medications. She had a case manager who performed home visits and assisted her in daily living training. Plaintiff was hospitalized three times for inpatient psychiatric care, most recently in March 2010, when she presented with thoughts of self-harm.

On February 11, 2009, clinical psychologist Robert Walsh performed a mental status exam. He noted Plaintiff's continued mental health treatment and a number of medications. He noted that her thought processes appeared logical and on task, she denied suicidal or homicidal ideation, had fair attention and concentration, but that her insight and judgment appeared poor. He diagnosed her with mood disorder, post traumatic stress disorder, and cannabis abuse, and gave her a GAF of 49. Dr. Walsh noted Plaintiff's reports of history of mood swings and mood instability with anxiety, as well as her use of marijuana. He recommended medication management, case management, and outpatient therapy.

On February 23, 2009, Maura Clark, Ph.D., completed a Mental Residual Functional Capacity Assessment based on review of Plaintiff's records. She concluded that Plaintiff had the

3

mental capacity to understand, remember, and follow simple instructions, but was restricted to work that involved brief, superficial interactions with fellow workers, supervisors, and the public. Dr. Clark opined that Plaintiff was able to sustain attention and concentration skills to carry out work-like tasks with reasonable pace and persistence with the above restrictions and in the context of performing simple, routine, repetitive, concrete, and tangible tasks. On July 10, 2009, Joelle Larsen, Ph.D., affirmed Dr. Clark's assessment.

On July 20, 2010, treating nurse practitioner Janet Anderson, who had approximately thirty years of experience in the psychiatric field, completed a form titled Opinion on Ability to do Work Related Mental Activities. She noted that she had reviewed Plaintiff's psychological evaluations and treatment records. She opined that Plaintiff's mental illness was serious enough that it would likely cause her to be absent from work, explaining Plaintiff's history of abuse, poor insight and judgment, and tendency to anger easily. Ms. Anderson reported that Plaintiff would miss more than three days per month of work due to her mental illness and would have to take breaks from work because of her reactions to stress and inaccurate perceptions of situations.

## C.     Vocational Expert Testimony

At the Administrative Hearing, Linda Gels testified as a neutral vocational expert. She opined that a person would need to stay on task 85 to 90 percent of a work day to maintain employment and could only miss about six to eight days per year.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will

4

reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

5

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have

an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### A. Substantial Gainful Activity

Plaintiff argues that none of her work was substantial gainful employment and therefore did not qualify as past relevant work. The Commissioner argues that, even if Plaintiff's prior work was

7

not substantial gainful activity, that characterization of it was "harmless error" because the job was unskilled and Plaintiff performed it long enough to learn it.

Past work is relevant work experience for the purposes of the step four analysis "when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, **and** was substantial gainful activity." 20 CFR 404.1565(a) (emphasis added); *see also* SSR 82-62, 1982 WL 31386 at *1-2 (Jan. 1, 1982). Not only is there a significant question about whether Plaintiff was paid enough for the work to be considered "gainful," but the ALJ was also required to consider the possibility that the employer "because of a benevolent attitude toward a handicapped individual, subsidize[d] the employee's earnings by paying more in wages than the reasonable value of the actual services performed." SSR 83-33, 1938 WL 31255, at *3 (Jan. 1, 1983); *see also Neave v. Astrue*, 507 F. Supp. 2d 948, 961 (E.D. Wis. 2007). In this case, Plaintiff testified that she was able to get and keep her job at the Indiana State Park Inns "because the lady that hired me knew me and knew my situation and my disabilities," and that because she "couldn't do [the job] the way they liked" the supervisor "just basically turned me loose and told me to clean up whatever I seen that was dirty." AR 47. The ALJ's opinion does not address Plaintiff's testimony about the single job that she was able to hold during the prior fifteen years. His failure to consider whether Plaintiff's past work was substantial gainful activity was not, as the Commissioner argues "harmless error," since there are significant questions as to whether Plaintiff's work as a cleaner was substantial gainful activity.

This case must be remanded for a complete finding either that Plaintiff's work really was substantial gainful employment at step four and, if not, for a step five finding regarding whether

8

Plaintiff is capable of performing other work. The ALJ is reminded that if he relies on testimony from a VE to make a disability determination, he must incorporate all of the claimant's limitations supported by medical evidence in the record into his hypotheticals. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)**.**

B.      **Mental Residual Functional Capacity**

Plaintiff argues that the ALJ did not analyze Plaintiff's GAF scores, failing to analyze evidence contrary to his conclusion.

The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at a RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96–8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id*. Although the ALJ need not discuss all the evidence, he must consider all the evidence that is relevant to making a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); SSR 96–8p. Furthermore, an ALJ's "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p at *7. "SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted." *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006).

9

Although a GAF score alone is not determinative of disability, s*ee Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), the ALJ did not even address Plaintiff's numerous GAF scores of less than 50, a score that indicates serious limitations. *See, e.g.*, *Punzio v. Astrue*, 630 F.3d 704, 711 (7th Cir. 2011) (recognizing that a GAF score of 60 was not inconsistent with an observation that the claimant's abilities to hold down an unskilled job would be "less than satisfactory"); *Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [the plaintiff] was mentally capable of sustaining work."). The Commissioner argues that none of the low scores appear to be from acceptable medical sources, and that Plaintiff's most recent GAF score, given by an acceptable medical source, was 55. None of these rationales appear in the ALJ's opinion. Instead, the only GAF score addressed by the ALJ was a single score of 49, a score that he discounted as inconsistent with other evidence. The ALJ did not mention the nine other GAF scores of less than 50, thereby erring by failing to address a significant line of evidence contrary to his conclusion. *See Campbell*, 627 F.3d at 306 ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

The ALJ relied significantly on the mental RFC assessment completed by non-examining state agency psychological consultant Maura Clark, Ph.D. The ALJ cited her opinion as his basis for discounting the GAF score of 49 given by examining consultant Robert J. Walsh, Psy.D. The only other mental health evidence described by the ALJ is that of psychiatric nurse Janet Anderson,

APN. She opined that Plaintiff's mental health conditions would prohibit her from working because of the need to take extra breaks and to miss more than three days of work per month.

Ms. Anderson, as a nurse practitioner, is not an "acceptable medical source" whose opinion would be entitled to controlling weight. 20 CFR §§ 404.1527, 416.927. However, an ALJ must consider "all relevant evidence in an individual's case record," including opinions "from medical sources who are not 'acceptable medical sources,'" SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006), and must apply the same criteria to determine the weight given their opinions as is applied to the opinions of "acceptable medical sources." *See Phillips v. Astrue*, 413 Fed. Appx. 878, 884 (7th Cir. 2010) ("In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)."). In this case, the ALJ did not discuss the opinion of any "acceptable medical source" who treated Plaintiff for her mental health issues. The Court is concerned that the ALJ did not fully examine the record and merely cherry-picked reasons to rely on the opinion on the non-examining state agency consultant, an opinion written before Plaintiff's most recent hospitalization. Although the ALJ gave some reasons for rejecting the opinion of Ms. Anderson, and the Court recognizes that he need not systematically detail each factor, *see* SSR 06-03p at *6, the Court is concerned that he did not address several factors that may have led him to give her opinion more weight, including whether her opinion was consistent with the record as a whole, whether she specialized in the particular mental health difficulties facing Plaintiff, the extent to which she was familiar with Plaintiff's medical record, and the recency of her report. *See* 20 C.F.R. §§ 404.1527(c); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

On remand, the ALJ is directed to fully consider each of the Plaintiff's alleged mental impairments and provide a logical bridge from the evidence to his conclusion, including a description of the medical evidence on which he bases his determination. The ALJ is directed to address Plaintiff's GAF score and its impact on the RFC determination, as well as the medical evidence from *treating* sources that supports his conclusions. The ALJ is reminded that, if "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision," the ALJ may order a consultative examination to develop the record and resolve any conflict or ambiguities. 20 C.F.R. § 416.919(b).

**C.     Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility.

In making a disability determination, an ALJ will consider a claimant's statement about his or her symptoms and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id.* The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;

(2)     Location, duration, frequency, and intensity of pain or other symptoms;

(3)     Precipitating and aggravating factors;

(4)     Type, dosage, effectiveness, and side effects of any medication;

(5)     Treatment, other than medication, for relief of pain or other symptoms;

(6)     Other measures taken to relieve pain or other symptoms;

(7)     Other factors concerning functional limitations due to pain or other symptoms.

12

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7 requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence." SSR 96-7p, 1996 WL 374186, at *1 (Jul. 2, 1996). Ruling 96-7p also provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ discounted Plaintiff's testimony because of her inconsistency with mental health treatment and therapy appointments and because of inconsistencies with how she described her drug and alcohol use. The Commissioner argues that the ALJ reasonably supported and articulated his credibility finding.

The ALJ discounted Plaintiff's alleged impairments caused by depression, anxiety, and substance abuse disorder because "the record indicates that the claimant has been inconsistent with mental health treatment and therapy appointments." AR 29. The ALJ did not ask Plaintiff about her inconsistency in seeking treatment, despite the Social Security Rulings' requirement that he consider her explanations. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (citing SSR 96-7p at *7). Furthermore, as the Seventh Circuit has emphasized, "mental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th

13

Cir. 2011) ("people with serious psychiatric problems are often incapable of taking their prescribed medications consistently"); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (listing cases).

Although the Commissioner argues that Plaintiff's inconsistency with therapy was not the sole basis for the ALJ's credibility finding, it was a significant reason, and indicates an apparent failure of the ALJ to consider the record and to comply with the requirements of the Rulings. On remand, the ALJ is directed to provide a thoroughly supported credibility finding in accordance with SSR 96-7p.

**D.     Witness Testimony**

Plaintiff also argues that the ALJ improperly discounted the testimony of one of Plaintiff's witnesses, Bernice Marias-Gallardo. The Commissioner argues that the ALJ considered her testimony to be partially credible but gave greater weight to the medical findings in the record. In particular, Plaintiff points out that Ms. Marias-Gallardo testified that there are days that Plaintiff is so afraid or depressed that she is unable to leave her home, and that she at times becomes too violent to be around people, evidence that she argues is particularly relevant in light of the VE's testimony that someone with multiple absences would be unable to work full time. The ALJ discounted the witnesses' testimony because it did not fully support the Plaintiff's allegations of her symptoms and because it did not address the affect of claimant's drug use.

Ruling 06-03p provides for consideration of evidence from other sources, such as friends and neighbors, because it "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. Because the case is being remanded for other reasons as described above, on remand the ALJ is directed to clarify the weight given to the witness,

particularly her claims about Plaintiff's absenteeism, keeping in mind the factors that determine the weight given a witness from SSR 06-03p.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 20th day of September, 2013.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record